**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **DANIEL C. ROMERO, an individual,**<br><br>  **Plaintiff, individually and on behalf of all other persons similarly situated,**<br><br>**vs.**<br><br>**LAKEVIEW LOAN SERVICING LLC,**<br><br>**AND**<br><br>**CENTRAL LOAN ADMINISTRATION & REPORTING d/b/a CENLAR FSB,**<br><br>  **Defendants.** | **CASE NO:**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff, Daniel C. Romero (Plaintiff), individually and on behalf of all other persons similarly situated, for his complaint against Lakeview Loan Servicing LLC (Lakeview) and Central Loan Administration & Reporting d/b/a Cenlar FSB (Cenlar) alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

**NATURE OF ACTION**

1.  This action arises under the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (FCCPA) and the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA). Plaintiff brings both individual and class causes of action.

2.  This case involves repeat violations of the aforesaid statutes by Defendants. Plaintiff is the subject of a foreclosure action brought by Lakeview where the loan servicer Cenlar.

1

3.   Lakeview is the fourth largest loan servicer in the United States with more than 1.4 million customers.  Lakeview partners with various other loan servicers including Cenlar.

4.   Cenlar is one of the country's leading mortgage sub-servicing companies.   It has been actively engaged in mortgage loan servicing and subservicing for over forty years.  Its total assets are over $1 billion.

5.   A foreclosure action was initiated against in the Circuit Court of the Nineteenth Judicial Circuit, Martin County, Florida by Lakeview against Plaintiff on November 27, 2019 in connection with his Loan Number ending in 1786.  (Case No. 19-CA-001399).  A copy of the foreclosure complaint is attached as **Exhibit A**.

6.   On or about May 5, 2020, Plaintiff through his attorneys who were representing Plaintiff in the foreclosure action, sent a cease contact letter to Lakeview stating in relevant part:

> **You are hereby advised to cease all contacts with our clients immediately. Please direct your responses and all future correspondences solely to this office. …**
>
> **I hereby expressly revoke any prior consent I may have given to call me on any/all of my phone numbers on record.**

See letter attached as **Exhibit B** hereto.

7.   Lakeview  had a duty to convey this direction to loan servicer Cenlar.  At all relevant times, Lakeview was responsible for the actions of its agent and loan servicer.  Cenlar received actual notice of the legal representation of Plaintiff, and his direction that it cease to contact him directly.  This is evidenced by the fact that Cenlar's loan statement of June 1, 2020 was sent to Plaintiff's lawyer instead of to Plaintiff.   See **Exhibit C**.  Unfortunately, the same was not true for the pre-recorded debt collection calls of Cenlar.   Notwithstanding the clear direction of the May 5, 2020 letter, Cenlar proceeded to call and harass Plaintiff thereafter with repeated pre-recorded calls to his cell phone.  There have been at least five such calls and they are continuing.

2

8.  On or about January 23, 2021 at 2:37 p.m., Cenlar made a pre-recorded call from its

number (609) 718-2432 in Ewing, New Jersey, to Plaintiff's cell phone as evidenced by the

following screen shot from Plaintiff's cell phone.  The pre-recorded message on all the calls is:

> This is an important message from Cenlar Central Loan and Administration
> Reporting.  Please contact our office as soon as possible at 800 242-7178.  Again
> that number is 800 242-7178.  Thank you.



9.  Two days later on January 25, 2021 at 6:28. p.m., Cenlar made another pre-recorded

call to Plaintiff's cell phone even though it had received notice of the cease contact letter from

Plaintiff's counsel.

10.  The pre-recorded calls are continuing with additional pre-recorded calls being

made by Cenlar on or about February 5, 2021 and February 9, 2021.

11.  Defendants' actions are part of a pattern and practice of unlawful conduct

towards  similarly  situated  individuals.    Consumer  internet  websites  are  replete  with

complaints about similar pre-recorded calls being made by Cenlar.   Further, Cenlar just

settled a consumer class case for Massachusetts citizens who were subjected to incessant collection calls. *See Ely Gemborys v. Cenlar Agency Inc.*, (D. Mass. Case No. 20-cv-40006).

12.  Here is the screen shot for the January 25, 2021 call made by Cenlar to Plaintiff:



## **PARTIES**

14.  Plaintiff is an individual residing in Palm City, Florida.

15.  Defendant Lakeview is a Delaware limited liability company with its principal place of business at 4425 Ponce de Leon Boulevard, Coral Gables, Florida 33146.  Defendant Cenlar is a financial services company headquartered in Ewing, New Jersey.

## JURISDICTION AND VENUE

16.   This Court has federal question jurisdiction under 28 U.S.C. § 1331, diversity jurisdiction under 28. U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367.

17.   Venue is proper in this District under 28 U.S.C. § 1391(b) since a substantial part of the events giving rise to the claim occurred here and because Defendants regularly transact business in this District.

## FCCPA, FDCPA, AND TCPA STATUTORY STRUCTURE

18.   The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5)

19.   The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector— who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

20.   Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*" (emphasis added).  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2).

21. For example, the FDCPA prohibits a debt collector from communicating with the consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer. *See* 15 U.S.C. §§ 1692c(a)(2).

22. Similarly, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication. *See* Fla. Stat. § 559.72(18).

23. Congress found that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" and it intended to prevent automated or pre-recorded telephone calls as "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* at (5) and (12).

24. Under the TCPA, any person who initiates calls to any number assigned to a cellular telephone service using an **artificial or prerecorded voice** without the recipient's prior express consent is liable to the recipient for actual monetary loss, or up to $500.00 in damages for each violation of the TCPA, whichever is greater. 47 U.S.C. § 227(b)(3)(B).

25. Further, TCPA regulations require that entities maintain internal do not call lists. 47 C.F.R. § 64.1200(d). Persons who request that calls cease have a private right of action if they receive more than one telephone solicitation within a year.

26. Additionally, under the TCPA, the court may increase the damage award up to three (3) times, up to $1,500.00, for each willful or knowing violation of the TCPA. *Id* at § 227(b)(3)(C).

## **GENERAL ALLEGATIONS**

27. At all material times herein, Defendant Lakeview is a "creditor" as defined by Florida Statutes, Section 559.55(5).

28. At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8).

29. At all material times herein, Defendan Cenlar is a "creditor" as defined by Florida Statutes, Section 559.55(5).

30. At all material times herein, Defendants used interstate mail while engaging in a business, the principal purpose of which is the collection of consumer debts.

31. At all material times herein, Defendants collect or attempt to collect—directly or indirectly—debts owed or due to another, or asserted to be owed or due to another.

32. At all material times herein, Defendant's knew Plaintiff was represented by counsel.

33. At all times material herein, Defendants attempted to collect an alleged debt due from Plaintiff, specifically a mortgage loan (hereinafter, "Debt").

34. At all material times herein, Defendants were "persons" subject to Florida Statutes, Section 559.72. *See* Fla. Stat. § 559.55(5); *see also Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

35. At all material times herein, Defendants acted themselves, or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, lawyers, and insurers.

36. At all material times herein, the Debt was consumer debt, an obligation resulting

7

from a transaction or transactions for goods or services, and was incurred primarily for personal, household, or family use.

37.  All necessary conditions precedent to the filing of this action occurred or have been waived by Defendants.

## FACTUAL ALLEGATIONS

38.  Plaintiff purchased property by obtaining a mortgage on August 20, 2018 and signing a Note on August 20, 2018.

41.  Subsequently, Defendant Cenlar obtained servicing of the loan.

42.  Plaintiff defaulted on mortgage and note obligations by failing to make the payment due on May 1, 2019.

43.  On November 27, 2019, a foreclosure action was filed against Plaintiff by Lakeview.

44.  On April 14, 2020, Plaintiff's Counsel filed a Notice of Appearance in the Foreclosure case. See NOA attached as **Exhibit D.**

45.  On or around May 5, 2020, Plaintiff's counsel faxed Lakeview the cease contact letter.

46.  Nevertheless, Defendant Cenlar made a pre-recorded call to Plaintiff no less than five times in violation of the cease contact letter and the above-cited statutes.

47.  Defendant's telephone calls, as more specifically alleged below, were made to Plaintiff's cellular telephone number ending in 5699 (hereinafter, "Cellular Telephone") using an artificial or pre-recorded voice (hereinafter, "APV").

48.  Plaintiff is the owner, regular user, and possessor of a Cellular Telephone with the assigned number ending in 5699.

49.  At no time herein did Defendant Cenlar possess Plaintiff's prior express consent to call his Cellular Telephone using an APV.

50.     Additionally, if Defendant contends the referenced phone calls were placed for "informational purposes only," it nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an APV.

51.   Even if Defendant Cenlar contends there was consent, that consent was revoked by the cease contact letter that was sent.

52.   Further, Defendant Cenlar is required under TCPA regulations to maintain an internal do not call list.  47 C.F.R. § 64.1200(d).  After it received the May 7, 2020 cease and desist letter from Plaintiff's counsel, it was required to put Plaintiff's phone number on its internal do not call list and cease all further calls no more than 30 days thereafter.  It did not do so.  Calls continue unabated through the filing of this Complaint.  These calls violate the internal do not call regulations as well as the pre-recorded voice prohibitions.

53.   The initiation of the calls violated the aforesaid statutes and Plaintiff has sustained injury in fact due to the calls.

54.   Defendants are in the best position to determine and ascertain the exact number and methodology of calls made to Plaintiff.

55.   Plaintiff retained the Law Offices of Consumer Law Attorneys Corp. (hereinafter collectively, "Undersigned Counsel") and Law Offices of Howard Prossnitz, PLLC,  for the purpose of pursuing this matter against the Defendants, and Plaintiff is obligated to pay his attorney a reasonable fee for their services.

56.   Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

57.   United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call placed using any artificial or pre-recorded voice to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

58.   Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call placed using an artificial or prerecorded voice to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

## **CLASS ACTION ALLEGATIONS**

59.   Plaintiff brings Counts One, Two and Three under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Classes defined as follows:

**Count One TCPA Class:**

Subclass (i): All persons in the United States who within the last four years (i) received calls from  Defendants with an artificial or per-recorded voice without their prior express consent;

Subclass (ii) All persons in the United States who within the last four years requested to be placed on Defendants' internal do not call lists and continued to receive more than one call in a twelve-month period starting 30 days after the request.

**Count Two FDCPA Class**:  All persons in the United States to whom Defendants conveyed debt collection information within the last year after being advised of their representation by counsel.

**Count Three FCCPA Class**:  All Florida residents to whom Defendants conveyed debt collection information within the last two years after being advised of their representation by counsel.

60.   Plaintiff reserves the right to modify the Class definitions as he obtains further information, including telemarketing call records, through discovery.

61. Excluded from the Class are Defendants and entities in which Defendants have a controlling interest, their agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff or immediate family.   This suit seeks only statutory damages and injunctive relief.  It is expressly not intended to allege claims for personal injury or emotional distress.

62. The proposed Class can be identified through the business and telephone records of Defendants.

63. The number of Class Members is so numerous that individual joinder of all Class Members is impracticable.

64. Plaintiff is a member of the proposed Classes.

65.   There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

a.  Did Defendants call the cell phones of Plaintiff and Class Members through the use of an artificial or per-recorded voice without their prior express consent?

b.  Did Defendants initiate calls to Plaintiffs and Class Members after being requested by Plaintiff and Class Members to be placed on an internal do not call list?

c.  Did the aforesaid conduct violate the TCPA?

d.  Did Defendants continue to communicate with Plaintiff and Class Members concerning debt collection after being advised of their representation by counsel?

e.  Did the aforesaid conduct violate the FDCPA?

f.  Did the aforesaid conduct violate the FCCPA?

g.   Did Defendants act willfully so as to entitle Plaintiffs and the Class Members to treble damages?

h.  Should Defendants be enjoined from further unlawful conduct?

66.  Plaintiff's claims are typical of the claims of Class Members.

67.  Plaintiff's interests do not conflict with those of Class Members.   He will fairly and adequately protect interests of Class Members.  He is represented by counsel experienced in class action litigation.

68.   Common questions of law and fact predominate over questions affecting only individual Class Members, and a class action is superior to other methods for the fair and efficient adjudication of this controversy.

69.  The interest of Class Members in individually controlling the prosecution of separate claims against Defendants is small due to the time and expense necessary to pursue individual litigation.  Management of these claims in a class action poses no significant impediments.

70.  Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate.   Plaintiff is informed and believe that the TCPA, FDCPA and FCCPA violations complained of herein are likely to continue unless an injunction is entered.

### COUNT ONE (CLASS CLAIM): TELEPHONE CONSUMER PROTECTION ACT- VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)

Plaintiff re-alleges paragraphs one (1) through seventy (70) as if fully restated herein and further states as follows:

71.  Defendants are  subject to, and have violated the provisions of, 47 United States Code, Section 227(b)(1)(A) by using an artificial or pre-recorded voice to call a telephone number assigned to a cellular telephone service without Plaintiff's or the Class Members' prior express consent.

72.   More specifically, Defendant Cenlar used an artificial or pre-recorded voice to call Plaintiff's Cellular Telephone *at least* five times in its attempt to collect the Debt.

73.   Plaintiff is informed and believes that multiple such calls were made to Class Members.

74.   At no time did Defendant possess Plaintiff's prior express consent to call Plaintiff on his Cellular Telephone.  Similarly, Defendant had no consent to call Class Members.

75.   Additionally, if Defendant contends these phone calls were made for "informational purposes only," it nonetheless lacked the required prior express written consent necessary to make such informational calls to Plaintiff's or Class Members' phones using an APV.

76.   In addition, Defendants violated the TCPA by ignoring the request of Plaintiff and Class Members that calls cease.  They should have been placed on an internal do not call list.

77.   Further, regardless of any alleged prior consent, that consent was revoked when instant the Plaintiff and the Class Members requested that calls cease.

78.   As a direct and proximate result of the aforementioned Defendants' conduct, namely on each of the Debt collection calls made, Plaintiff and Class Members suffered:

     a.     the periodic loss of their Cellular and Telephone service;

     b.     lost material costs associated with the use of peak time Cellular Telephone minutes allotted under his Cellular Telephone service contract;

     c.     expenditure of costs and attorney's fees associated with the prosecution of this matter, along with other damages which have been lost;

     d.     stress, anxiety, loss of sleep, invasion of privacy, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA; and

     e.     statutory damages.

## COUNT TWO (CLASS CLAIM):
## UNLAWFUL DEBT COLLECTION PRACTICE –
## <u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)</u>

Plaintiff re-alleges paragraphs one (1) through seventy (70) as if fully restated herein and further states as follows:

84.   Defendants are subject to, and violated the provisions of, Florida Statutes, Section 559.72(18) that they should not communicate with a debtor if they know that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

85.   Specifically, at no time did Defendants have authority to call Plaintiff after the cease-and-desist letter of May 7, 2020 and anytime thereafter. Similarly, Defendants have no authority to communicate with Class Members after they were advised that they were represented by counsel.

86.   Despite the same, Defendant Cenlar called Plaintiff who was represented by counsel. Plaintiff is informed and believes that it also contacted Class Members after being advised that they were represented by counsel.

87.   At all material times herein, Defendants knew of Plaintiff's counsel representation and Class Member's representation when communicated to them.

88.   As such, Defendant Cenlar knowingly called Plaintiff and Class Members who were represented by counsel.

89.   As a direct and proximate result of Defendants' actions, Plaintiff and Class Members sustained damages as defined by Florida Statutes, Section 559.77.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's actions and conduct, Plaintiff respectfully requests against Defendant entry of:

      a.    Judgment against Defendants declaring that Defendants violated the FCCPA;

      b.    Judgment against Defendants declaring that Defendants violated the TCPA;

      c.    Judgment against Defendants for statutory damages in the amount of $500.00 for each of the telephone calls that violated the TCPA.

      d.    Judgment against Defendants for treble statutory damages in the amount of $1,500.00 for each of the telephone calls that violated the TCPA for which Defendant acted knowingly and/or willfully;

      e.    Judgment against Defendants for maximum statutory damages for each of the violations of the FCCPA;

      f.    Judgment against Defendants for actual damages in an amount to be determined at trial;

      g.    Judgment against Defendants for an award of reasonable attorneys' fees and costs;

      h.  An order certifying this action as a class action pursuant to Federal Rule of Civil   Procedure 23, establishing a Class and any Sub-Classes the Court deems appropriate, finding that Plaintiff is a proper representative for the Class, appointing Plaintiffs' lawyer as Class Counsel; and

      i.  Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant, and demands that they and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this potential litigation as required by law. Respectfully submitted,

**Consumer Law Attorneys**

/s/ *Young Kim*
**Young Kim, Esq., FBN 122202**
2727 Ulmerton Rd., Ste. 270
Clearwater, FL 33762
Phone: (877) 241-2200
litigation@consumerlawattorneys.com
ykim@consumerlawattorneys.com
*Counsel for Plaintiff*

/s/*Howard B. Prossnitz*
Howard B. Prossnitz, Esq, FBN 60031
**Law Offices of Howard B. Prossnitz, P.L.L.C.**
1014 Ontario Street
Oak Park, IL 60302
prossnitzlaw@gmail.com
Phone: (708) -203-5747
*Counsel for Plaintiff*

16

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR MARTIN COUNTY, FLORIDA
CIVIL DIVISION

LAKEVIEW LOAN SERVICING, LLC,

             Plaintiff,                       Case#: .

-vs.-

DANIEL C. ROMERO A/K/A DANIEL ROMERO,
UNKNOWN TENANT IN POSSESSION 1,
UNKNOWN TENANT IN POSSESSION 2,
UNKNOWN SPOUSE OF DANIEL C. ROMERO
A/K/A DANIEL ROMERO,

             Defendant(s).

## VERIFIED COMPLAINT TO FORECLOSE MORTGAGE

    Plaintiff, LAKEVIEW LOAN SERVICING, LLC, sues the Defendant(s) DANIEL C. ROMERO A/K/A DANIEL ROMERO, UNKNOWN TENANT IN POSSESSION 1, UNKNOWN TENANT IN POSSESSION 2, UNKNOWN SPOUSE OF DANIEL C. ROMERO A/K/A DANIEL ROMERO, and states:

## COUNT I
## MORTGAGE FORECLOSURE

    1.     This is an action to foreclose a mortgage on real property located in MARTIN County, Florida and by reason thereof the venue for this matter is in MARTIN County, Florida.

    2.     DANIEL C. ROMERO A/K/A DANIEL ROMERO executed and delivered a Promissory Note ("Note") dated August 20, 2018 and DANIEL C. ROMERO A/K/A DANIEL ROMERO executed and delivered a Mortgage dated August 20, 2018 securing payment of the Note. The Mortgage was recorded on August 20, 2018, in Official Records Book 3011, at page 934, of the Public Records of MARTIN County, Florida, and mortgaged the real property ("Property") described therein. References made herein to "Borrower" refers to the individual(s) executing the Note; "Mortgagor" refers to those executing the Mortgage. True and correct copies of said Note and Mortgage, are attached hereto as Exhibit "A" and Exhibit "B" respectively.

    3.     The described subject Mortgage was subsequently assigned to Plaintiff. Copies of the relevant Assignments of Mortgage are attached as Composite Exhibit "C."

    4.     Plaintiff's counsel is in physical possession of the Note endorsed in blank which is the subject of this action and therefore, Plaintiff is the holder of that Note.

    5.     The Mortgage was a purchase money mortgage and was given to secure a loan for the acquisition of the Property. The Mortgage is superior in dignity to any prior or subsequent right, title, claim, lien or interest

6435220                                           19-01689-1

**Exhibit A**

of the Defendants named herein or any person claiming by, through or under said Defendants since the institution of this suit.

6.     Defendant, DANIEL C. ROMERO A/K/A DANIEL ROMERO, is the current owner of the real property which is the subject of the Mortgage.

7.     There has been a default in the payment of the amounts due under the Note and Mortgage in that the payment due for May 1, 2019 and all subsequent payments have not been made.

8.     Plaintiff has and hereby declares the full amount payable under the Note and Mortgage to be due and payable.

9.     All conditions precedent to filing of this action have been performed or have occurred.

10.    Borrower(s), as maker(s) of the Note, may be held personally liable for a deficiency, if any, unless Borrower(s) has/have discharged the subject debt in bankruptcy, in which event no deficiency is or will be sought.

11.    There is now due and owing the principal sum of $221,019.15, together with all sums that may be due for interest, taxes, insurance, escrow advances and/or fees for inspections, property preservations or other expenses incurred to protect the property, and expenses and costs of suit including but not limited to filing fees, recording fees, title search and examination fees, fees due for service of process and such other costs as may be allowed by this Court.

12.    Plaintiff has and will incur reasonable attorneys' fees and therefore, seeks to be awarded these fees.

13.    Defendants, UNKNOWN TENANT IN POSSESSION 1 and UNKNOWN TENANT IN POSSESSION 2, are joined by virtue of any right, title or interest said Defendants may claim as tenants in the property pursuant to a lease agreement, either written or oral. Said interest is subject, subordinate, and inferior to the lien of the Mortgage held by Plaintiff.

14.    Defendant, UNKNOWN SPOUSE OF DANIEL C. ROMERO A/K/A DANIEL ROMERO, is joined by virtue of any right, title or interest said Defendant may claim by virtue of marriage to Defendant, DANIEL C. ROMERO A/K/A DANIEL ROMERO, and/or by virtue of joining in and executing the subject Mortgage. Said interest is subject, subordinate, and inferior to the lien of the Mortgage held by Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment foreclosing the Mortgage; and (a) enumerating all amounts this Court determines due to Plaintiff pursuant to said Note and Mortgage and award attorneys' fees, costs, outstanding principal, interest, advances (b) ordering the Clerk of the Court to sell the subject property to satisfy the amount due Plaintiff, in whole or in part; (c) adjudging that the right, title and interest of any party claiming by, through, under or against any Defendant named herein be deemed inferior and subordinate to the Plaintiff's Mortgage lien and forever be barred and foreclosed; (d) retaining jurisdiction of this Court in this action to make any and all further orders and judgments as may be necessary and proper, including issuance of writ of possession and the entry of a deficiency judgment if the proceeds of the sale are insufficient to pay Plaintiff's claim (no deficiency judgment shall be sought against those parties who have

6435220                                                                      19-01689-1

**Exhibit A**

discharged the debt in bankruptcy pursuant to the provisions of the Bankruptcy Code 11 U.S.C. Section 101, et seq. or where a bankruptcy court only granted Plaintiff or its predecessors-in-interest in rem relief from the bankruptcy automatic stay; and, (e) for such other and further relief as this Court may deem just and proper.

**VERIFICATION**

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief, and that I am authorized to make this Verification of Complaint by LAKEVIEW LOAN SERVICING, LLC

Signature: _____
Name:      TERESA BURKE
Title:     VICE PRESIDENT DOCUMENT EXECUTION
Date:      11/25/19

***Pursuant to Fla. R. Jud. Admin. 2.516(b)(1)(A),  Plaintiff's counsel hereby designates its primary email address for the purposes of email service as:
MRService@mccalla.com***

DATED: 11/26/19

McCalla Raymer Leibert Pierce, LLC
Attorneys for Plaintiff
225 E. Robinson St. Suite 155
Orlando, FL 32801
Telephone: (407) 674-1850
Fax:(321) 248-0420
Email: MRService@mccalla.com

By: _____
for Lisa Woodburn, Esq.
FL Bar #11003

Sara B. Collins, Esq.
Florida Bar No. 53992

Pursuant to the Fair Debt Collections Practices Act, you are advised that this office may be deemed a debt collector and any information obtained may be used for that purpose.

6435220

19-01689-1

**Exhibit A**

# EXHIBIT A



**NOTE**

FHA Case No.

095-4782790-703
ROMERO
Loan
MIN:

| AUGUST 20, 2018 | STUART, | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

3069 SW HOLLIS AVE, PALM CITY, FL 34990-3248
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $222,832.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is PRIMELENDING, A PLAINSCAPITAL COMPANY. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on OCTOBER 1, 2018. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on SEPTEMBER 1, 2048, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18111 PRESTON ROAD, SUITE 900, DALLAS, TX 75252 or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,230.49.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall

36.81          Page 1 of 3          FHA Florida Fixed Rate Note - 03/16



**Exhibit A**

be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

- BORROWER - DANIEL C ROMERO

*[Sign Original Only]*

Individual Loan Originator: **SHARREN MCGARRY**, NMLSR ID: **303807**
Loan Originator Organization: **PRIMELENDING, A PLAINSCAPITAL COMPANY**, NMLSR ID: **13649**

PAY TO THE ORDER OF
WITHOUT RECOURSE
PrimeLending, a PlainsCapital Company

BY:

PRINTED NAME: Susan Saffle

TITLE: AVP

36.81

FHA Florida Fixed Rate Note - 03/16

**Exhibit A**

# EXHIBIT B

Recorded in Martin County, FL 8/20/2018 1:38 PM
Carolyn Timmann, Clerk of the Circuit Court & Comptroller
Rec Fees: $103.50 Mtg Tax: $780.15 Int Tax: $445.66
CFN#2711453 BK 3011 PG 934 PAGE 1 of 12

After Recording Return To:
NTC
2100 ALT 19 NORTH
PALM HARBOR, FL 34683
727-771-4000
ATTN: POST CLOSING - ACCOUNT #
PRLO1

This Document Prepared By:
LAUREN DERETA
POLUNSKY BEITEL GREEN, LLP
18111 PRESTON ROAD, SUITE 900
DALLAS, TX 75252
(772) 324-5292

_____
[Space Above This Line For Recording Data]

## MORTGAGE

ROMERO
Loan #: ███████████
MIN: 100053601316673093
MERS Phone: 1-888-679-6377
PIN: 18-38-41-009-002-00190.00000
Case #: 095-4782790-703

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **AUGUST 20, 2018**, together with all Riders to this document.

**(B) "Borrower"** is **DANIEL C ROMERO, AN UNMARRIED MAN**. Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is **PRIMELENDING, A PLAINSCAPITAL COMPANY**. Lender is a **CORPORATION** organized and existing under the laws of **TEXAS**. Lender's address is **18111 PRESTON ROAD, SUITE 900, DALLAS, TX 75252**.

**(E) "Note"** means the promissory note signed by Borrower and dated **AUGUST 20, 2018**. The Note states that Borrower owes Lender **TWO HUNDRED TWENTY-TWO THOUSAND EIGHT HUNDRED THIRTY-TWO AND 00/100** Dollars (U.S. **$222,832.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **SEPTEMBER 1, 2048**.

**FHA Florida Mortgage - 09/15**
⊕  19367.13                                    Page  1  of 12



Case 2:21-cv-14094-AMC Document 1 Entered on FLSD Docket 02/18/2021 Page 26 of 44

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider        ☐ Planned Unit Development Rider

☐ Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY of MARTIN:
LOT 19 AND THE SOUTH ONE-HALF OF LOT 20, BLOCK 2, PALM HEIGHTS, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 1, PAGE 23, OF THE PUBLIC RECORDS MARTIN COUNTY, FLORIDA.

FHA Florida Mortgage - 09/15
19367.13                         Page 2 of 12

which currently has the address of **3069 SW HOLLIS AVE, PALM CITY**, Florida **34990-3248** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

FHA Florida Mortgage - 09/15
19367.13

Page 3 of 12

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable

FHA Florida Mortgage - 09/15

19367.13

Page 4 of 12

to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties,

FHA Florida Mortgage - 09/15
19367.13                                    Page  5  of 12

retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument,

FHA Florida Mortgage - 09/15

19367.13                                    Page 6 of 12

Case 2:21-cv-14094-AMC Document 1 Entered on FLSD Docket 02/18/2021 Page 31 of 44

including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property

Order: 191142656DKL                         Exhibit A  8 of 12          Requested By: douglaslafayette, Printed: 10/10/2019 5:19 PM
Doc: FLMART:3011-00934

or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change

FHA Florida Mortgage - 09/15
19367.13                                  Page 8 of 12

Case 2:21-cv-14094-AMC   Document 1   Entered on FLSD Docket 02/18/2021   Page 33 of 44

of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale

FHA Florida Mortgage - 09/15
🌐 19367.13                                    Page 9 of 12

might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

FHA Florida Mortgage - 09/15
19367.13

Page 10 of 12

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____

- BORROWER - DANIEL C ROMERO

Borrower's Mailing Address: 3069 SW HOLLIS AVE, PALM CITY, FL 34990-3248

Signed, sealed and delivered in the presence of:

_____          _____
Witness    Kimberly A. Douglas                      Witness   Jerrine Lang

FHA Florida Mortgage - 09/15
19367.13                                              Page 11 of 12

Case 2:21-cv-14094-AMC Document 1 Entered on FLSD Docket 02/18/2021 Page 36 of 44

[Space Below This Line For Acknowledgment]

STATE OF FLORIDA

COUNTY OF MARTIN

The foregoing instrument was acknowledged before me this _August 20, 2018_, by DANIEL C ROMERO, AN UNMARRIED MAN, who is personally known to me or who has produced _FL drivers license_ as identification.

> KIMBERLY A. DOUGLAS
> Notary Public - State of Florida
> Commission # FF 986734
> My Comm. Expires Jun 25, 2020
> Bonded through National Notary Assn

_Kimberly A. Douglas_
Notary Public

My Commission Expires: _____

Individual Loan Originator: SHARREN MCGARRY, NMLSR ID: 303807
Loan Originator Organization: PRIMELENDING, A PLAINSCAPITAL COMPANY, NMLSR ID: 13649

# EXHIBIT C

Carolyn Timmann, Clerk of the Circuit Court & Comptroller
Rec Fees: $18.50
CFN#2756343 BK 3060 PG 2760 PAGE 1 of 2

When Recorded Return To:
Cenlar FSB C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

Regarding this instrument, contact Cenlar FSB, 425 Phillips Blvd, Ewing, NJ 08618, telephone # 1-800-223-6527, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PRIMELENDING, A PLAINSCAPITAL COMPANY, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to LAKEVIEW LOAN SERVICING, LLC, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD, MS 5-251, CORAL GABLES, FL 33146 (800)223-6527, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage was made by DANIEL C ROMERO, AN UNMARRIED MAN, and recorded in Official Records of the Clerk of the Circuit Court of MARTIN County, Florida, in Book 3011, Page 934 and Instrument # 2711451, upon the property situated in said State and County as more fully described in said Mortgage.

Dated this 23rd day of May in the year 2019
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PRIMELENDING, A PLAINSCAPITAL COMPANY, ITS SUCCESSORS AND ASSIGNS

_C. Malliet_
CARLY MALLIET
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
CORPORATE
SEAL
1999
DELAWARE
★

_Jeanette Roikes_
JEANETTE ROIKES
WITNESS

_S. Hicks_
SUSAN HICKS
WITNESS

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CENAV 407033068 DEFAULT MIN 100053601316673093 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 DOCR T231905-12:28:02 [C-1] BFRMFL1

*D0037588656*

Exhibit A
Page 1 of 2

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 23rd day of May in the year 2019, by Carly Malliet as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PRIMELENDING, A PLAINSCAPITAL COMPANY, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
ASHLEY MORRELL
COMM EXPIRES: 04/29/2022

ASHLEY MORRELL
Notary Public - State of Florida
Commission # GG 212021
My Comm. Expires Apr 29, 2022
Bonded through National Notary Assn.

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CENAV 407033068 DEFAULT  MIN 10005360131667093 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026  DOCR T231905-12:28:02 [C-1]  EFRMFL1

   

*D0037588656*

TX Result Report

P  1
05/07/2020 15:57
Serial No.   A5AY011020469
TC:    370636

| Addressee | Start Time | Time | Prints | Result | Note |
|-----------|-----------|------|--------|--------|------|
| 6097184889 | 05-07 15:46 | 00:11:11 | 002/002 | OK | |

Note
TMR:Timer TX, POL:Polling, ORG:Original Size Setting, FME:Frame Erase TX,
DPG:Page Separation TX, MIX:Mixed Original TX, CALL:Manual TX, CSRC:CSRC,
FWD:Forward, DC:PC-FAX, BND:Double-Sided Binding Direction, SP:Special Original,
FCODE:F-code, RTX:Re-TX, RLY:Relay, MBX:Confidential, BUL:Bulletin, SIP:SIP Fax,
IPADR:IP Address Fax, I-FAX:Internet Fax

Result
OK: Communication OK, S-OK: Stop Communication, PW-OFF: Power Switch OFF,
TEL: RX from TEL, NG: Other Error, Cont: Continue, No Ans: No Answer,
Refuse: Receipt Refused, Busy: Busy, M-Full:Memory Full, LOVR:Receiving length Over,
POVR:Receiving page Over, FIL:File Error, DC:Decode Error, MDN:MDN Response Error,
DSN:DSN Response Error, PRINT:Compulsory Memory Document Print,
DEL:Compulsory Memory Document Delete, SEND:Compulsory Memory Document Send.



# CONSUMER LAW ATTORNEYS

2325 Ulmerton Road, Ste. 16, Clearwater, FL 33762
Phone: (877)241-2200  Fax: (727)623-4611

## Facsimile Transmittal

| | | | | |
|---|---|---|---|---|
| Attn: | Lakeview Loan Servicing | Fax: | (609) 718-4889 | |
| From: | Consumer Law Attorneys | Date: | 05/05/2020 | |
| Re: | Daniel Romero | Pages: | 2 Including Cover | |
| | Loan # ▮▮▮▮▮▮▮▮ | | | |

☐ Urgent      ☐ For review      ☐ Please comment      ☐ Please reply      ☐ Please recycle

Notes/Comments:

3rd Party Letter of Authorization

**Exhibit B**

# CONSUMER LAW
# ATTORNEYS

2325 Ulmerton Road, Ste. 16, Clearwater, FL 33762
Phone: (877)241-2200  Fax: (727)623-4611

## Facsimile Transmittal

| | | | |
|---|---|---|---|
| Attn: | Lakeview Loan Servicing | Fax: | (609) 718-4889 |
| From: | Consumer Law Attorneys | Date: | 05/05/2020 |
| Re: | Daniel Romero | Pages: | 2 Including Cover |
| | Loan # ███████ | | |

☒ Urgent    ☒ For review    ☐ Please comment    ☐ Please reply    ☐ Please recycle

Notes/Comments:

**3ʳᵈ Party Letter of Authorization**

**Exhibit B**



# CONSUMER LAW ATTORNEYS

2727 Ulmerton Road, Ste. 270, Clearwater, FL 33762
Phone: (877)241-2200  Fax: (727) 623-4611

## Authorization Form

**Mortgage Company:** Lakeview Loan Servicing      **Loan Number** ███████████

RE: TILA Request and Request for Information under Regulation X

Dear Sir or Madam,

Please be advised that this firm represents the below referenced clients in the above referenced matter for debt arising from the mortgage serviced by you. All communications regarding this matter, including, but not limited to: Requests under the Truth in Lending Act, 15 U.S.C Section § 1601, et seq. ("TILA"), Request under 12 U.S.C 2605 (e) ("RESPA"), Requests under 12 CFR 1024 of Regulation X, all other requests related in any way to my loan with your company, requests for payment, forbearance or modification questions or offers, discussions regarding status of any other matter whatsoever in connection to the above mentioned mortgage must be made through our office. **You are hereby advised to cease all contacts with our clients immediately. Please direct your responses and all future correspondences solely to this office.**

I authorize you to furnish the requested information regarding my mortgage loan to my attorneys, Consumer Law Attorneys, at their office address as shown below. **I hereby expressly revoke any prior consent I may have given to call me on any/all of my phone numbers on record. My phone numbers are** ██████-5699                                                      .

My Designated Agent is        Consumer Law Attorneys        Authorized Agent(s):
Phone: 877-241-2200           2727 Ulmerton Rd Suite 270     All Agents
Fax: 727-623-4611             Clearwater, FL 33762

Property Address: 3069 SW Hollis Ave                    Palm City, FL 34990

_Daniel Romero_                    4/1/20          ████████████

**Borrowers Signature**              **Date**           **Social Security #**

Daniel Romero

**Borrowers Printed Name**

**Co-Borrowers Signature**           **Date**           **Social Security #**

**Co-Borrowers Printed Name**

Page | 10

Initials: _DR_        Initials: _DR_

**Exhibit B**

CLA-FD-20191115



PO Box 77404
Ewing, NJ 08628
**STATEMENT ENCLOSED**

| | |
|---|---|
| Statement Date: | 06/04/20 |
| Account Number: | |
| Payment Due Date: | 06/01/20 |
| **Amount Due:** | **$32,209.11** |

*If payment is received after 07/17/20, $49.22 late fee will be charged.*

**Contact Us**

Customer Service/Pay By Phone: 877-681-7316
Website: www.loanadministration.com

* Qualified Written Requests, notifications of error, or requests for information concerning your loan must be directed to PO Box 77423 Ewing NJ 08628

143969-4.12 1 4833-1.1  1oz

DANIEL C ROMERO
C/O YOUNG KIM, ESQ.
2727 UMBERTON RD. STE. 270
CLEARWATER FL 33762

---

## Account Information

| Property Address | 3069 SW HOLLIS AVE PALM CITY FL 34990-3248 |
|---|---|
| Outstanding Principal | $221,019.15 |
| Escrow Balance | $-5,038.92 |
| Maturity Date | September 2048 |
| Interest Rate | 5.2500% |
| Prepayment Penalty | NONE |

## Explanation of Amount Due

If you are Experiencing Financial Difficulty:  You may call the U.S. Department of Housing and Urban Development (HUD) at 800-569-4287, or go to www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of homeowner counselors or counseling organizations in your area.

| | |
|---|---|
| Principal | $280.14 |
| Interest | $950.35 |
| Escrow (for Taxes and Insurance) | $759.89 |
| Other | $0.00 |
| **Current Payment Due 06/01/20** | **$1,990.38** |
| Total Fees Charged Since Last Statement | $1,250.00 |
| Overdue Amount | $28,849.98 |
| **Total Amount Due** | **$32,209.11** |

## Transaction Activity (05/02/2020 to 06/01/2020)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 05/04/20 | MIP/PMI Disb | | $151.89 |
| 05/05/20 | FEE - ATTORNEY FEES | $560.00 | |
| 05/05/20 | FEE - ATTORNEY COST | $260.00 | |
| 05/13/20 | FEE - | | |
| 05/15/20 | FEE - ATTORNEY FEES | $425.00 | |
| 05/22/20 | PAYOFF RUSH HANDLING FEE | $5.00 | |

## Past Payments Breakdown *Unapplied funds represent funds that are held in suspense waiting final application. If this amount represents a partial payment, your payment will be applied upon receipt of the amount required to complete your payment.

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Other | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| *Unapplied Funds | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

## ** Delinquent Notice **

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of 06/01/2020 you are 397 days delinquent on your mortgage loan.

Effective 11/27/19, a foreclosure action was initiated.  This statement is for **INFORMATIONAL PURPOSES ONLY**.  For reinstatement amount of Payoff, please contact your servicer.

If you are Experiencing Financial Difficulty: You may call the U.S. Department of Housing and Urban Development (HUD) at 800-569-4287, or go to www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of homeowner counselors or counseling organizations in your area.

### Recent Account History

*Payment Due 12/01/19: Unpaid balance of $1,735.01
*Payment Due 01/01/20: Unpaid balance of $1,735.01
*Payment Due 02/01/20: Unpaid balance of $1,735.01
*Payment Due 03/01/20: Unpaid balance of $1,735.01
* Current Payment Due 06/01/20: $1,990.38

*Payment Due 04/01/20: Unpaid balance of $1,990.38
*Payment Due 05/01/20: Unpaid balance of $1,990.38
*Payment Due 06/01/20: Unpaid balance of $1,990.38

* **Total: $32,209.11 due.  You must pay this amount to bring your loan current.**

---

**See Reverse Side For Additional Important Information**

Please return this portion with your payment

Make Checks Payable To:



AU

DANIEL C ROMERO
C/O YOUNG KIM, ESQ.
2727 UMBERTON RD. STE. 270
CLEARWATER FL 33762

Check this box if your address or personal information has been updated on the reverse of this payment coupon.

**Exhibit C**

**IMPORTANT INFORMATION**
*Please read carefully*

**Payment Information:**
Payments are due and payable by the Payment Due Date. Payments can be made online through our website (if offered) or you can access our Automated Telephone System by calling the number listed on this statement. If you wish to pay by check, please be sure to:
1. Remove your coupon from the bottom of your loan statement and send it along with your check or money order to the address shown on the coupon.
2. **Do not send cash.** DO NOT include correspondence with your payment.
3. When sending your monthly payment via overnight carrier, express or certified mail, or if sending a principal payment separate from your monthly payment, please use the following address: Payment Processing 425 Phillips Blvd, Ewing, NJ 08618. When sending a principal payment only, please remember to indicate "principal only" along with your loan number in the memo section of your check. **PLEASE NOTE:** Additional principal payments can only be made with, or after your current month's payment. **NO principal payments can be applied to loans that are not current.**
4. **Do not send partial payments.** The disposition of a partial payment received may depend on a number of factors including but not limited to: the amount of the partial payment, whether your loan is delinquent, the investor of your loan, whether your loan contains an escrow feature, the number of times a partial payment was received within a 12 month period, whether your loan is being or has been modified. For any of these reasons, a partial payment may be (1) returned to you, (2) applied to your loan, (3) accepted but held in a non-interest bearing unapplied funds account until you send us additional funds sufficient to equal a full periodic payment due.
5. If payment is in excess of the amount due, you must indicate on the coupon how the excess is to be applied. **Monies received in excess of the payment due that are not identified for application may be used to make multiple payments, which could make your loan current or 1 month prepaid. Remaining monies may be applied first to pay any other balances due, such as fees and advances, if permitted by applicable law.**
6. We reserve the right to redeposit returned checks. Redeposit and returned check fees will be charged unless prohibited by law.

---

### Important Contact Information

Please include your account number on ALL correspondence. DO NOT SEND correspondence with your payment.

| **Payments** | **Tax Bills** | **Insurance** | **Collections** | **All other Correspondence** |
|---|---|---|---|---|
| PO Box 11733<br>Newark, NJ 07101-4733 | Current Tax Bill not needed (please see below for details) | PO Box 202028<br>Florence, SC 29502-2028<br>mycoverageinfo.com<br>PIN: CEN300 | PO Box 77407<br>Ewing, NJ 08628<br>FAX 609-538-4017 | PO Box 77404<br>Ewing, NJ 08628<br>FAX 609-538-4005 |

---

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING. THIS LOAN STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSITUTUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT INDEBTEDNESS AS YOUR PERSONAL OBLIGATION.

**Automatic Payment (ACH):**
We offer a free, convenient service that automatically debits your payment each month from your checking or savings account. To take advantage of this service, visit our website (if offered) and complete the Automatic Payment (ACH) Authorization or contact Customer Service directly.

**Payoff Request**
A written request should be submitted in advance for a payoff statement. You may request a payoff statement be faxed to you by calling 1-877-7PAYOFF (1-877-772-9633) (a fee for faxing applies, if permitted by applicable law). Please have available your account number, social security number, the payoff date, and your fax number. No verbal information can be provided.

**Automated Loan Information:**
You can access your loan information 24 hours a day, 7 days a week by calling our Customer Service automated telephone system or by going online at the web address listed on the reverse side of this statement (if offered). Please have your account number and social security number available.

**Servicemembers Civil Relief Act (SCRA):**
Eligible servicemembers and their spouses or civil partners may receive protections under the SCRA. To find out how to determine if you are eligible for protections under SCRA and to receive instructions on how to invoke your rights, please contact us at the number listed.

**Insurance Coverage:**
All loans are required to have adequate property insurance in force at all times, including flood insurance, if the property is situated in a special flood hazard area. Acceptable hazard and extended dwelling insurance coverage amounts are equal to 100% of the full insured value of the improvements, or equal to the loan balance, if greater than 80% of the replacement costs. Flood insurance must equal the lesser of all loan balances, the full structure replacement cost value or NFIP flood coverage maximum for the property type. There may be, at lender discretion, situations where the flood coverage cannot be lower than 80% of the replacement costs. Please consult your insurance agent to determine the adequacy of your coverages. At time of renewal or if changing insurance companies, please direct any evidence of insurance coverage through one of the following methods: through the website at mycoverageinfo.com using PIN: CEN300, by fax: (843) 413-7133 or mail to: PO Box 202028 Florence, SC 29502-2028. Failure to provide evidence of adequate insurance may result in the placement of coverage at your expense.

If your property is damaged by fire, flood or by any other cause, you must notify us immediately and we will instruct you on how to proceed.

**Property Taxes:**
If you received your Real Estate tax bill for an item that is included on your Annual Escrow Statement, please keep it for your records as we receive the tax information directly from your taxing authority. It is not necessary to contact or mail us this information. However, if you receive a delinquent tax bill/notice, please forward bill to us at DelinquentTaxes@loanadministration.com for review and handling.

Supplemental tax bills are generally borrower's responsibility as the bills are sent directly to the borrowers from your tax office and no information or reporting regarding these bills are provided to us. However, if your closing agent collected funds at the time of settlement of your loan in anticipation of a supplemental tax bill being issued, then please submit to us for review at SupplementalTaxes@loanadministration.com.

All Tax Exemption requests must be submitted by YOU directly to your tax office. If approved, please forward the documentation to us at TaxExemptions@loanadministration.com
Any changes made by your tax office to the property covered under this mortgage (i.e. new parcel number, parcel split) must be communicated to us so that our records can be updated. These changes can be submitted via email to customerservice@loanadministration.com.

---

Please print any changes to your name or address below:     **Exhibit C**

Name: _____